*Mendez Galvez v. Garland*

BIA
Kinnicutt, IJ
A094 473 724

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of March, two thousand twenty-four.

PRESENT:
> **RICHARD C. WESLEY,**
> **ALISON J. NATHAN,**
> **SARAH A. L. MERRIAM,**
> *Circuit Judges.*

_____

**Jose Felix Mendez Galvez,**

> *Petitioner,*

> v.                                                                          **22-6420**

**Merrick B. Garland, United States Attorney General,**

> *Respondent.*

_____

**FOR PETITIONER:**                          H. Raymond Fasano, Youman, Madeo & Fasano, LLP, New York, NY.

**FOR RESPONDENT:**                          Brian Boynton, Principal Deputy Assistant Attorney General; Justin R. Markel, Senior Litigation Counsel; Sharon M. Clay, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals (BIA) decision, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DISMISSED IN PART, DENIED IN PART**, and **GRANTED IN PART**.   The BIA's decision is **VACATED** and the case is **REMANDED** for further proceedings consistent with this order.

Petitioner Jose Felix Mendez Galvez (Mendez), a native and citizen of El Salvador, petitions for review of a decision of the BIA, which affirmed a decision of an immigration judge (IJ) denying his application for cancellation of removal and denied his motion to remand for consideration of new evidence.   *In re Mendez*

*Galvez*, No. A094 473 724 (B.I.A. Aug. 9, 2022), *aff'g* No. A094 473 724 (Immig. Ct. N.Y.C. Dec. 7, 2018).  We assume the parties' familiarity with the underlying facts, procedural history, and issues on review, to which we refer only as necessary to explain our decision.

## I. Cancellation of Removal

We have reviewed both the IJ's decision and the BIA's decision "for the sake of completeness."  *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006).

Noncitizens who, like Mendez, are not permanent residents, are eligible for discretionary cancellation of removal if they satisfy four statutory conditions.  *See* 8 U.S.C. § 1229b(b)(1).  Only the fourth condition, which requires the applicant to "establish[] that removal would result in exceptional and extremely unusual hardship" to a qualifying relative, is at issue in this case.  *Id.* § 1229b(b)(1)(D).[1] In assessing hardship, the agency considers "the ages, health, and circumstances"

---

[1] In addition to concluding that Mendez failed to meet the statutory eligibility criteria for cancellation of removal, the IJ also held that it would in any event deny cancellation as an exercise of discretion.  However, the BIA expressly declined to address this issue and so we do not consider this as a ground for denying Mendez's petition for review.  *See Urgen v. Holder*, 768 F.3d 269, 272 (2d Cir. 2014).

3

of the qualifying relatives, evaluating "in the aggregate" how factors such as a lower standard of living, diminished educational opportunities, and adverse conditions in the country of removal might affect them. *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63–64 (B.I.A. 2001).

Our jurisdiction to review the denial of cancellation of removal is limited to colorable constitutional claims and questions of law, which we review *de novo*. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (a)(2)(D); *Paucar v. Garland*, 84 F.4th 71, 79–80 (2d Cir. 2023). The agency commits an error of law if it applies an incorrect legal standard, or if it completely overlooks or seriously mischaracterizes material evidence. *See Paucar*, 84 F.4th at 80. But the Court must dismiss "any claim that essentially disputes the correctness of the agency's factfinding or the wisdom of its exercise of discretion." *Id.* (quotation marks omitted).

Two of Mendez's claims fail to raise a colorable question of law over which we have jurisdiction. The agency did not seriously mischaracterize Mendez's testimony regarding the availability of farming work in El Salvador. The agency certainly disagreed with his argument that the low pay of this work would result in exceptional hardship to his family, but it did not mischaracterize his testimony,

4

which was that he could seek such work. Nor did the agency misapply the legal standard for evaluating the risk that Mendez's daughter would suffer hardship from lack of medical care in El Salvador, as articulated in *Matter of J-J-G-*, 27 I. & N. Dec. 808, 811–12 (B.I.A. 2020). The agency quoted and properly applied the legal standard from *Matter of J-J-G-*, simply paraphrasing the question of whether adequate medical care for Mendez's daughter would be "reasonably available" in El Salvador as whether she would have "access" to it. Certified Administrative Record (CAR) at 4.

However, we agree with one of Mendez's contentions of legal error. The agency entirely overlooked evidence material to the hardship determination in this case: evidence regarding Mendez's serious back injury and its implications for his ability to support his qualifying relatives through work in El Salvador. While "the agency is not required to expressly parse or refute on the record each individual argument or piece of evidence," *Ojo v. Garland*, 25 F.4th 152, 171 (2d Cir. 2022) (quotation marks omitted), we must remand when the agency has entirely failed to consider material evidence—at least where that evidence is not too insignificant to merit consideration. *See id.* at 169; *Yi Long Yang v. Gonzales*, 478

5

F.3d 133, 142 (2d Cir. 2007); *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005).

Mendez testified that he fractured his spine while working in landscaping, which forced him to leave that job and work for a pharmaceutical company. He had attempted to return to the landscaping job, but could not perform the same work. Indeed, a medical record dated soon after the injury reflects that Mendez was "[r]estricted from work duty at [that] time" and would be "off work full-time for 6 months at least" after undergoing necessary surgery. CAR at 1280. After surgery and approximately a year of physical therapy, the injury still caused him significant pain. Eventually, Mendez ended up moving to a different job in landscaping, despite his back pain.

Mendez described performing "heavy work" at this job in addition to work as a machine operator; he opined that he could perform the job even if it consisted solely of the "heavy work" even though it is against the advice of his doctors and causes him pain. CAR at 643–44; *see also id.* at 557, 716, 718–19. However, when asked what would happen if he had to perform physically demanding labor in El Salvador and ended up "injur[ing] the screws or the rod in [his] back," such that he could no longer do such work, he answered, "[t]hat would be the end of me,"

6

and stated he would not be able to support his children. *Id.* at 649–50. As he explained, he would not have health insurance in El Salvador and would have to pay for any medical care out of pocket. By contrast, Mendez testified that reinjury would not be so catastrophic in the United States, where he had health insurance. Mendez's wife echoed his concerns, testifying that if he could not find work in El Salvador "where he's able to operate on machinery . . . and instead has to do very strong physical work," and were to reinjure his back, their family would not be able to pay for his medical care—with serious consequences for his ability to provide for their children. *Id.* at 778.

The agency never so much as mentioned Mendez's injury and back condition. The IJ simply assumed that Mendez could perform agricultural labor in El Salvador without discussion. The BIA similarly stated that Mendez "testified that he could seek work as a farmer," and there was "no evidence in the record that he could not find employment in El Salvador," while acknowledging that the agricultural work available to Mendez would have low wages. *Id.* at 4. But Mendez's argument was not simply that he would not be able to find employment in El Salvador. He also argued that his spinal condition could

7

prevent him from performing the only work available to him there, and that such agricultural work presented a risk of debilitating injury that would be uniquely devastating in El Salvador, as opposed to in this country—where he had health insurance and had previously been able to find less physically demanding work.

It is true that "we presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise." *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006). But here, the record compellingly indicates otherwise. The agency perhaps could have discounted Mendez's concerns as unduly speculative given his continued employment in landscaping in this country—an argument the Government presses before us. But the agency did not engage in any of this analysis. It simply failed to consider the evidence of Mendez's spinal condition, and "failure to consider important evidence" is "not excused by the fact that a hypothetical adjudicator, applying the law correctly, might also have" reached the same result. *Poradisova*, 420 F.3d at 77 (quotation marks omitted). The agency committed legal error by entirely overlooking Mendez's spinal condition and its impact on his ability to support his family through agricultural labor in El Salvador, as the agency assumed he could

8

do.

Even with this legal error, we would not order a remand if it were futile—that is, if we were confident that the agency would reach the same decision without the error. *See, e.g.*, *Hernandez v. Garland*, 66 F.4th 94, 103 (2d Cir. 2023). Here, though, we cannot be sure that is the case. Much of the agency's reasoning relied on Mendez's ability to work in farming in El Salvador and, given that hardship factors are considered cumulatively, *see In re Monreal-Aguinaga*, 23 I. & N. Dec. at 64, we cannot be confident in how consideration of the overlooked evidence of Mendez's spinal condition would affect that holistic analysis. We therefore remand for the agency to consider all material evidence in evaluating whether removal would cause exceptional and extremely unusual hardship to Mendez's qualifying relatives.

## II. Motion to Remand

We review the denial of a motion to remand for the consideration of new evidence for abuse of discretion, which may be found when the BIA's decision "rests on an error of law, inexplicably departs from established policies, or is so devoid of any reasoning as to raise the concern that it acted in an arbitrary or

capricious manner." *Paucar*, 84 F.4th at 80. Here, the BIA reasoned that Mendez

failed to show that his new evidence was likely to change the result of his case,

citing *Matter of Coelho*, 20 I. & N. Dec. 464 (B.I.A. 1992). Mendez argues that the

BIA erroneously required him to show that his new evidence would certainly and

conclusively, rather than likely, change the result of his case, but this argument is

meritless. The BIA quoted the applicable legal standard from *Coelho* before

performing its analysis and it concluded that Mendez "did not show that a

different outcome is *likely* in his case if the proceedings were remanded." CAR at

7 (emphasis added). We accordingly deny Mendez's petition as to his motion to

remand.

For the foregoing reasons, the petition for review is **DISMISSED IN PART,**

**DENIED IN PART,** and **GRANTED IN PART**. The BIA's decision is **VACATED**

and the case is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10